### UNITED STATES of America
### v.
### Jackie Benny BOYKIN, also known as Benny Jackie Boykin.
### Crim. No. 14243.

United States District Court
M. D. Pennsylvania.
Nov. 1, 1967.

Bernard J. Brown, U. S. Atty., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for plaintiff.

Richard C. Brittain, Danville, Pa., for defendant.

### OPINION

FOLLMER, District Judge.

Defendant Jackie Benny Boykin, also known as Benny Jackie Boykin, was indicted by a Grand Jury in this district on a one count indictment charging him with having, while a prisoner at the United States Penitentiary, Lewisburg, Pennsylvania, wilfully assaulted another inmate with a dangerous weapon, in violation of 18 U.S.C. § 113(c). He entered a plea of not guilty and the case was tried by a jury on January 30 through February 1, 1967. At the conclusion of the trial the jury returned a verdict of guilty, and the defendant was sentenced to the custody of the Attorney General for a period of four years.

On February 8, 1967, defendant filed a motion for a new trial, in support of which he alleges the following:

(1) Prosecution witnesses were not sequestered during the course of the trial and, defense witnesses were threatened, abused, and intimidated by the United States of America resulting in prejudice and bias.

(2) Trial Justice admitted inadmissable (sic) evidence to be introduced against defendant and said evidence was instrumental in obtaining a verdict of guilty.

(3) Petit jurors not being sequestered during the trial were allowed to travel to and from their homes each evening. One of these jurors, your petitioner has just learned rode to and from the trial proceeding in the company of several of the prison employees at the United States Penitentiary, Lewisburg, Pennsylvania during which travel the relative merits and guilt of defendant was discussed by these prison employees and this petit juror thereby depriving petitioner of his right to be heard by an impartial jury.

(4) Alleged oral admissions were allowed to be introduced by the prosecution, which petitioner-defendant denied making, and said oral admissions under the circumstances were inadmissable (sic), Escobedo v. [State of] Illinois, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]; Miranda v. [State of] Arizona [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694], (July 14, 1966).

Defendant's first contentions are untrue. Pages 78 and 79 of the trial transcript clearly show that both the prosecution and defense witnesses who were inmates at the Lewisburg Penitentiary were not permitted into the courtroom during the general course of the trial, but were brought into the courtroom one at a time solely for the purpose of testifying. At the conclusion of their testimony they were returned to the penitentiary.

The charges that defense witnesses were threatened, abused and intimidated were made by the defendant during the course of the trial and were answered at that time by the Government to the satisfaction of the trial court. (See pages 375 to 378 of the trial transcript). No evidence has been presented to change that opinion.

The defendant's second numbered contention makes a broad conclusionary statement, and fails to specify what inadmissible evidence the court permitted to

be introduced against defendant. This contention is therefore without merit.

The defendant's third numbered contention first alleges that the court failed to sequester the jurors during the trial. Sequestration is done only under extraordinary circumstances. The defendant did not request the court to do this prior to or during the course of the trial, and can not now complain of the court's failure to do so.

However, defendant's next contention is much more serious. He claims that one juror rode to and from the trial in a car occupied by several employees of the Lewisburg penitentiary, and that there was conversation concerning his case. In order to determine the facts relevant to this incident, three separate post-trial hearings have been held by this court.

At the first hearing, held on April 25, 1967, it was developed that a Mrs. Ruth Shiner of Kulpmont, Pennsylvania, was called for jury duty in Lewisburg. On Monday, January 30, 1967, she rode to and from Lewisburg with another juror, Mrs. Mary Stanton. Mrs. Shiner was selected as a juror in defendant's case, but Mrs. Stanton was excused, leaving Mrs. Shiner without transportation to Lewisburg for Tuesday. At this point she called Mr. Charles Rosetta, whom she knew worked at the Lewisburg penitentiary, and he agreed to transport her to and from Lewisburg.

It is undisputed that on Tuesday, January 31, Mrs. Shiner rode to Lewisburg in a car occupied by Mr. Rosetta and four other civilian employees of the federal penitentiary. There is, however, considerable dispute as to what transpired on that trip. Mr. James Edward Kennedy, an inmate at the penitentiary, testified (Transcript of hearing held September 13, 1967, pp. 3–20) that while working in one of the prison offices he overheard a conversation between Mr. Charles Rosetta and a parole officer by the name of Mr. Burkhart. Mr. Kennedy's testimony concerning the alleged conversation is as follows:

They were talking about several subjects and then Mr. Burkhart asked

if the trial had started downtown yet, and Mr. Rosetta said, yes, that one of the ladies that was sitting on the jury was riding back and forth with him. He said that this lady said that that was the most disgusting thing she had ever heard of and that they must be a bunch of animals out there and that brought a chuckle out of everyone and that was the end. (Transcript of hearing held September 13, 1967, pp. 6–7).

This testimony is disputed by every other party involved. At the first post-trial hearing conducted in this matter (April 25, 1967), all of those who rode in the car on the morning of January 31 testified. This included Mrs. Shiner, Mr. Charles Rosetta, Mr. Robert Rosetta, Mr. Raymond Hardnock, Mr. Harold Narum and Mr. Leo Hardnock. These witnesses are unanimous in stating that no conversation whatsoever concerning defendant's case took place. All of the men testified that they were unaware of the fact that defendant's case was being tried, and all agreed that the case was not mentioned at any time. Mrs. Shiner also testified that no conversation concerning defendant took place.

Mr. Kennedy's testimony was also contradicted in other aspects. He stated that the alleged conversation between Rosetta and Burkhart took place during Rosetta's usual "distribution." (Transcript of hearing held September 13, 1967, p. 6). Both Hardnock (id. at 24) and Rosetta (id. at 36) testified that the latter's usual distribution does not include Hardnock's office. Hardnock testified that he did have a conversation in his office which could relate to this case, but that the conversation was with inmate Kennedy and was substantially as follows:

A. On the morning of the day that Mrs. Shiner rode to work with us we brought her to the post office here. In the office, just out of the clear, as a matter of conversation, I wasn't aware at that time that inmate Boykin's case was down here, I just remarked to Mr. Kennedy, inmate Kennedy, that we had a break in our usual

routine that day, meaning the routine of our car pool for years coming into work, in that Mr. Rosetta gave a ride to a lady from Kulpmont for jury duty, whereupon inmate Kennedy said, oh, that's grounds for a writ. He said, do you know Boykin's case is downtown now? I said,—I replied, no, I didn't know that. And Kennedy stated, yes, he said, and if she's on the jury for—or if that lady is on the jury he could file a writ, meaning Boykin could file a writ on the basis that a juror was transported by institutional employees, and I stated on hearing that, I stated, well,—this is to the best of my recollection; I'm going on back to January—I said, well, I don't know what jury she's on or if she's on any. She didn't say.

Now, to the best of my knowledge that is the conversation that took place. That was on the morning of the 31st; the day that we brought Mrs. Shiner to the post office. (Transcript of hearing held September 13, 1967, pp. 22–23).

At the April 25 hearing inmate James O'Brien testified that he had hearsay information from inmate James Kennedy (who was at this time temporarily incarcerated in Ohio) concerning the alleged conversation, and that the official involved was Mr. Raymond Hardnock (p. 39). At the September 13 hearing the Government produced Mr. Hardnock, but now inmate Kennedy testified that the conversation took place between Charles Rosetta and a Ron Burkhart. Mr. Burkhart had transferred from Lewisburg to Chicago and was therefore not immediately available when this change in alleged participants occurred. However, Mr. Burkhart was produced for the September 22 hearing, and testified that no conversation similar to the one described by Kennedy ever took place. It was further revealed at this hearing that Mr. Burkhart was defendant's case worker and knew when the trial was scheduled to begin, and would therefore have no reason to ask Mr. Rosetta for such information. (Transcript of hearing held September 22, 1967, p. 17).

This court has had the benefit of three separate hearings on this subject, and has had the opportunity to closely observe each witness. I am convinced that no improper discussion took place during the one trip Mrs. Shiner made with the federal employees. Defendant has therefore not been prejudiced by this occurrence and a new trial is not required. California Fruit Exchange v. Henry et al., 89 F.Supp. 580 (W.D.Pa. 1950).

Defendant's final contention is that the court erred in allowing the introduction into evidence of his alleged oral admissions, which he denied having made. Defendant made this contention at trial, and a separate hearing in chambers was held by the court. It was determined that the confession was voluntarily made, but this was submitted as a question of fact to the jury. It also appears that this ground was subsequently abandoned by defendant. (Transcript of hearing held September 22, 1967, p. 23).

Accordingly, the motion of Jackie Benny Boykin, also known as Benny Jackie Boykin, for a new trial will be denied.